UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TOMMY LEE GOOSBY, JR.                    CIVIL ACTION NO. 13-cv-3180

VERSUS                                   JUDGE WALTER

NATE CAIN                                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Tommy Lee Goosby ("Petitioner") of possession of a firearm by a convicted felon. Petitioner was adjudicated a second felony offender and sentenced to 20 years at hard labor. His conviction and sentence were affirmed on direct appeal. State v. Goosby, 111 So.3d 494 (La. App. 2d Cir. 2013), writ denied, 125 So.3d 418 (La.). Petitioner now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

 **A. Relevant Facts**

Petitioner was charged with one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Petitioner stipulated that he had pleaded guilty to two counts of simple robbery so was a convicted felon. Tr. 368. He also testified at trial and admitted that he had a handgun in his possession. His sole defense was based on a Louisiana jurisprudential doctrine that a felon who is in imminent peril of great bodily harm, or

reasonably believes himself or others to be in such danger, may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self defense or in defense of others. This is a defense, and the burden is on the defendant to prove it by a preponderance of the evidence. He must show that the threat of force by another was imminent and apparent and that he had no reasonable alternative but to possess the firearm. But a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he first withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. Goosby, 111 So.3d at 499.

  The evidence at trial showed that police were called to the King's Manor Apartments in Shreveport, where Detective Rod Johnson was told that there had been a verbal altercation that escalated to gunfire between a group of juveniles and someone in the apartment complex. The detective learned that R. D. and another juvenile had been shot at a nearby intersection. Detective Johnson interviewed witnesses and was told that R. D. and Petitioner had been involved in the altercation. Petitioner often stayed with his girlfriend in apartment 145.

  Detective Johnson tried to find Petitioner at his last known address on Fulton Street. When Johnson arrived, Petitioner's brother took off running. Other family members present were not forthcoming about Petitioner's location. Johnson saw people at the location getting their hair cut.

Petitioner later came to the police station voluntarily. He was wearing different clothes and had a different hairstyle than earlier in the day. Surveillance video from the apartment complex showed Petitioner had been wearing braids, but he appeared that night with his hair closely-cut. Petitioner denied that he had been present at the scene of the crime and claimed that he was at the Fulton Street house.

The surveillance video was introduced into evidence. It showed four juveniles walking through the gate in the direction of apartment 145 at approximately 2:30 p.m., and then walking away back through the gate. The video showed Petitioner, as the juveniles were leaving, approach R. D. and quickly make motions with his hand. R. D. pulled a firearm and pointed it at Petitioner, and Petitioner pulled out a gun and pointed it at R. D. The juveniles all ran away. Shots were later exchanged, but the shooters were beyond the scope of the video. Detective Johnson testified that the video showed the juveniles disengaging from the conflict and Petitioner acting as aggressor and running after them.

There was evidence that one of the youths was shot in the chest and another in the back. Two different calibers of shell casings were found, including three casings found in front of apartment 145. Petitioner's weapon was never recovered.

Lisa Stewart, Petitioner's girlfriend at the time, testified that the incident began when R. D. knocked on her door, pointed a gun at her face, and asked to speak to Petitioner because he was trying to get something from him. R. D. allegedly warned that Petitioner needed to watch his back because R. D. was going to get him. Stewart said Petitioner was

not there because he had walked to a nearby dollar store. She closed the door and called Petitioner. Stewart was cross-examined about a statement she gave to police in which she described a third armed person named K-9, which she did not mention in her testimony. Stewart was shown the surveillance video. She testified that another video had been shown to her at the police station, and it showed her and K-9. She claimed she had been shown three different versions of the video, she denied that she kept a gun in her apartment, and she testified that Petitioner did not cut his hair or change his clothes that day.

Petitioner also testified. He agreed with Ms. Stewart that she called him and alerted him to a situation with R. D. Petitioner testified that he returned to the apartments and had an altercation with the group of juveniles. One of them punched him and, while they were wrestling, Petitioner lifted a youth's shirt, saw a handgun, and took it.

Plaintiff testified that he put the gun in his pants then ran toward R. D. to ask him what was going on. This was, according to Petitioner, the confrontation on the video. Petitioner said that as he approached R. D., the juvenile drew a gun on him, and Petitioner admitted that he also pulled a gun in response. Petitioner said he attempted to get back in the apartment after the juveniles ran off, but the door was locked. He heard gunshots coming at him, and he returned three shots. He denied knowing until later that he hit anyone. Petitioner also denied getting a haircut or changing clothes that day. Petitioner claimed he threw the gun down somewhere on 70th Street. He admitted that he lied to police but said he did so because he was scared.

### B. Jackson v. Virginia

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

### C. Analysis

The state appellate court reviewed the facts and applicable law, including Jackson, in detail. The court held that a jury could have reasonably rejected Petitioner's self-defense claim. It noted that the video showed that Petitioner, while carrying a gun, pursued a juvenile victim at a time when the juveniles were retreating in a non-hostile manner. Petitioner was in no imminent peril of great bodily harm and should have disarmed himself and withdrawn from any further conflict when he had that opportunity. The court also held that a jury could determine that it was Petitioner who was the aggressor in the situation and chased the juveniles and, after a significant allowance of time for retreat, chose to return fire at them from a great distance away. There were also ample reasons to reject Petitioner's credibility. State v. Goosby, 111 So.3d at 502-03.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state court's decision included a thorough and thoughtful assessment of the facts and application of the Jackson standard in light of the elements of the crime and the offered defense. The jury had evidence of guilt before them that they could reasonably accept, and the appellate court could find that verdict appropriate under Jackson. The state court's decision was entirely reasonable, so there is no basis for federal habeas relief with respect to this claim.

**Spoliation of Evidence**

The surveillance video offered by the State captured the confrontation between Petitioner and R. D. Ms. Stewart claimed that she had been shown a video at the police station that also showed R. D. pulling a gun on her and pulling the trigger. Defense counsel

raised a spoliation claim before trial. Ms. Stewart testified and was cross-examined. She claimed that the video had been altered because she did not appear on it, and she had been in the first video she saw. Judge Roy Brun found, after a full exploration of the evidence, that he did not believe Ms. Stewart. He said, "I don't find her to be willingly deceitful, but I think she is mistaken." Judge Brun added that he believed Stewart's discussion with police had given her some notion that there was something else on the video, but he had watched the video with an eye toward the time counter and believed it would require "a fancy alter job" to have done what was alleged. He concluded, "I don't believe the evidence is there that this video has been tampered with." Tr. 251-68.

Petitioner raised this claim on direct appeal. The appellate court found that the trial judge's rejection of Stewart's testimony was reasonable considering the evidence presented and the inconsistencies in her explanations of the events. There was simply no other evidence that video material was destroyed or altered, and Detective Johnson had reported that the video was as he had discovered it. State v. Goosby, 111 So.3d at 503.

The knowing presentation of false evidence at trial may violate a criminal defendant's due process rights. Napue v. Illinois, 79 S.Ct. 1173, 1177 (1959). The state court found that there was not credible evidence to support the claim that the video had been altered. Petitioner attacks that assessment of the facts. Habeas corpus relief is not available on such a fact-based decision unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court. Section

2254(d). The state court's assessment in this case was quite reasonable and based on a thorough assessment of the evidence by the trial judge. Relief is not available on this claim.

**Denial of New Trial**

When police arrived at the scene and learned there had been a shooting associated with people in apartment 145, they entered the apartment and conducted a protective sweep, during which they noted a box for a 9 mm Ruger pistol. The defense filed a motion to suppress and a motion in limine related to the box, but they were denied. Detective Johnson testified at trial that during his sweep he noted an "item." Defense counsel then objected. The court instructed the prosecution that it could not introduce evidence that the item was a pistol box unless there was some evidence that it was connected to a weapon used in this offense. There had been some mention of a possible crime lab report, but the prosecutor conceded that he had no lab report to link the box to this crime. Evidence of the box was not allowed. The prosecution did, however, introduce the police interviews of Petitioner and other witnesses, and they contained references to a gun box.

After trial, Petitioner filed a motion for new trial and claimed that the state failed to disclose the negative results of crime lab tests in violation of <u>Brady</u>. A crime lab employee testified at a hearing that she was able to determine that two of the cartridges found at the scene were fired from a Browning pistol found near the juveniles. Three other cartridges were fired from another pistol, but they were not linked to a particular gun. The employee said that Detective Johnson asked her to do additional analysis of the unmatched cartridges

to determine if they could have been fired from a 9 mm Ruger pistol, because the State had recovered a Ruger pistol box. The lab employee gave an oral answer (not a lab report) to the detective that the recovered 9 mm cases were consistent with being fired from a 9 mm Ruger pistol but, without a particular pistol to test and compare, she could not say that it was or was not fired from any particular gun.

The trial court denied the motion for new trial. He noted that evidence of the pistol box had largely been excluded, and he did not see how it prejudiced the defense to not have the lab employee testify about her efforts. The appellate court reviewed the matter, considering the sound discretion of the trial judge in addressing a motion for new trial and in light of the Brady requirements. The appellate court held that the trial court's ruling was correct. The lab employee's testimony that the casings found at the scene were consistent with a Ruger was not exculpatory evidence, so no Brady violation occurred. State v. Goosby, 111 So.3d at 505.

Habeas corpus relief is available only on grounds of a constitutional violation, so the court is not concerned whether the state court properly applied its own rules regarding the granting of a new trial. The only constitutional issue presented in connection with this argument is the potential Brady claim. Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 83 S.Ct. 1194 (1963). To establish a Brady claim a

petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th Cir. 2006). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). A petitioner must show a "reasonable probability of a different result." Banks v. Dretke, 124 S.Ct. 1256, 1276 (2004).

The testimony of the lab technician was neither favorable nor material. It did nothing to prove that Petitioner did not possess a weapon (which he admitted) or to support his self-defense theory. To the contrary, any suggestion by the crime lab technician, however weak it might be, that the casings could be associated with a pistol found inside the apartment would tend to show, if anything, that Petitioner armed himself inside the apartment before he went out to confront the juveniles. When the state court's rejection of this claim is viewed under the deferential standard of 28 U.S.C. § 2254(d), there is no basis for relief on the claim.

**Excessive Sentence**

The sentence for the crime of conviction included a prison term of 10 to 15 years. Petitioner was adjudicated a second-felony offender and, therefore, faced a maximum enhanced sentence of 30 years. The trial judge considered the arguments of counsel. He noted that had Petitioner not been illegally carrying a weapon, the shootings of two people likely would not have happened. The shooting also led to several shots being fired near apartments where persons not involved in the altercation could have been hit. Considering

Petitioner's extreme disregard for public safety, and his past conviction that involved illegal use of a weapon, the court determined that a sentence of 20 years was appropriate. Tr. 556-63. Petitioner argued on direct appeal that his sentence was excessive. The appellate court reviewed the relevant factors under Louisiana law and found that the sentence was not constitutionally excessive. State v. Goosby, 111 So.3d at 505-06.

To the extent Petitioner complains that the state court did not comply with Louisiana statutes or Constitution regarding sentencing, those arguments are not cognizable in federal habeas corpus. Narvais v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Petitioner also cites federal authorities in his challenge to his sentence. Assuming he has exhausted his state court remedies with respect to his federal arguments, they lack merit.

It is extremely difficult for a defendant who challenges his sentence to establish a lack of proportionality in violation of the federal Constitution. Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions,

capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

The state court gave sound reasons for Petitioner's sentence. The 20-year term was 10 years less than the statutory maximum. There were two juvenile victims who were shot by Petitioner in connection with the events. These factors preclude any finding that the state court's rejection of this claim was an objectively unreasonable application of a clearly established Supreme Court holding. Relief is not permitted on this claim.

**Motion to Reconsider Sentence**

Petitioner filed with the trial court a motion to reconsider his sentence. He complained on direct appeal that the trial judge never addressed it. The appellate court reviewed the attack on the sentence in spite of the pending motion. The appellate court advised Petitioner that if the trial court later ruled on the motion, Petitioner could seek appellate review of the decision at that time. State v. Goosby, 111 So.3d at 506 n. 4.

Petitioner argues to this court that it was procedurally incorrect for the appellate court to review his sentence prior to the trial court ruling. Petitioner's entire argument on this claim is rooted in state procedural law. The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131

S.Ct. 859, 861 (2011). Habeas relief is not available even if Petitioner is correct on this state law issue.

**Right to Remain Silent; Multiple Offender Hearing**

Petitioner argued on direct appeal that the trial judge should have advised him of his right to remain silent at his arraignment on the habitual offender charge. The appellate court noted that the failure to provide such warnings was an error under state law, but it was harmless because habitual offender status was established by competent evidence offered by the State rather than any admission by Petitioner. Petitioner had remained silent at his hearing, and the State proved its case with evidence. State v. Goosby, 111 So.3d at 507.

Petitioner's memorandum summarizes this holding of the appellate court but offers no argument that there was any constitutional error associated with it that might warrant habeas review. He simply describes the prior proceedings and says it is "only in cumulation with the multitude of other errors in this case that this error indicates prejudice to [Petitioner]." The court sees no error with respect to that claim or any of the others discussed above.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of January, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge